UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Joseph Laudicina, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 CV 50177 |
| | ) Honorable Iain D. Johnston |
| City of Crystal Lake, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

"Moral of the story is I chose a half measure when I should have gone all the way."

"Half Measures"; *Breaking Bad*, Season 3, Episode 12 (2010)

Allowing for "garden variety" damages without finding a waiver of the psychotherapist-patient privilege is a half measure. This Court rejects the "garden variety" waiver approach because of a clear, sweeping holding of the Seventh Circuit, which this Court cannot ignore. There are other analytical and practical reasons to reject this approach too.

## I. INTRODUCTION

This case involves a claim of excessive force against a police officer, which allegedly resulted in emotional anxiety, mental trauma, humiliation, and stress, among other injuries.

This matter is before the Court on Defendants' motion for access to Plaintiff's mental health records, including drug and alcohol treatment records. Dkt. #32. Plaintiff filed a response in opposition. Dkt. #35. The Court heard argument on the Motion.[1]

The Court grants the Motion, allowing Defendants to seek and obtain Plaintiff's mental health and drug and alcohol treatment records and information for five years preceding the date of the incident giving rise to this lawsuit; namely, June 22, 2010. A protective order will limit the use and disclosure of these records during the pretrial proceedings.

---

[1] The Motion has been pending far too long. The Court thanks counsel for their patience, and apologizes to the parties for the delay.

1

## II. ALLEGATIONS IN COMPLAINT AND DISCOVERY RESPONSES

Plaintiff's complaint is straight-forward and complies with Federal Rule of Civil Procedure 8 in that it contains a short and plain statement of the claim. In under four pages, the complaint alleges that on June 22, 2015, Plaintiff was shot without legal justification or probable cause and that his conduct before the shooting "did not warrant the amount of force used." Dkt. #1. The complaint also states that "[a]s a direct and proximate result of the acts of [Defendant police officer] the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages." Dkt. #1 p. 3.

After answering the complaint, Defendants sought discovery regarding Plaintiff's damages. Specifically, Defendants served an interrogatory requesting the following information: "Identify all damages of any kind, whether physical, mental, emotional, financial, or economic that Plaintiff is claiming as a result of any of the incidents, events, or occurrences that form the basis for the Complaint, including the basis for each." Dkt. #32-1 p. 4. In response, Plaintiff provided the following answer: "[T]he Plaintiff has sustained numerous physical injuries due to being shot, and has incurred medical bills associated with that. In addition, he has incurred emotional injuries (characterized by the Courts as 'garden variety') as a result of being shot." Dkt. #32-1 p. 5.

Defendants then sought information relating to Plaintiff's mental health and drug and alcohol treatment. Plaintiff objected, arguing that the information sought was privileged and not relevant.

## III. ISSUE

The main issue for this Court to decide is whether Plaintiff has waived the psychotherapist-patient privilege by placing his mental health at issue, even when only claiming to seek compensation for "garden variety" mental health damages. A secondary issue is whether, even if the privilege is waived, the information is relevant under Federal Rule of Civil Procedure 26.[2]

## IV. ANALYSIS

Rule 26(b)(1) delineates the scope of civil discovery in federal court. Absent a protective order under Rule 26(c)(1)(D), discovery may be obtained when the information sought is (1) not privileged, (2) relevant to a party's existing claim or defense, and (3) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

---

[2] The issue at this point is discoverability under Federal Rule of Civil Procedure 26, not admissibility under Federal Rule of Evidence 401. *See Johnson v. Rogers*, No. 16 CV 2705, 2018 U.S. Dist. LEXIS 86769, at *12-13 (S.D. Ind. May 23, 2018); *Estate of DiPiazza v. City of Madison*, No. 16 CV 60, 2017 U.S. Dist. LEXIS 68821, at *3 (W.D. Wisc. May 5, 2017).

A. Privilege

### 1. Is the Information Sought Privileged?

Plaintiff's mental health records and information are privileged under the psychotherapist-patient privilege. The U.S. Supreme Court made that clear in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). Although the Supreme Court recognized this privilege, it also stated that the privilege was not absolute and could be waived. *Id.* at 15 n.14. For example, plaintiffs waive the privilege by placing their mental health "at issue." *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discovery any records of that state.").

### 2. Has the Privilege Been Waived?

The more challenging question before the Court is whether Plaintiff waived the psychotherapist-patient privilege by pleading that he suffered emotional anxiety, mental trauma, humiliation, fear, and stress because of Defendants' actions and that he is seeking damages because of those injuries, as well as swearing that he incurred "emotional injuries" because of Defendants' actions. In short, has Plaintiff impliedly waived the privilege by placing his mental health at issue by seeking damages for his alleged emotional injuries?

#### a. Competing Interests Result in Three Approaches

The judges in the U.S. District Court for the Northern District of Illinois – indeed, nationwide – have been collectively wrapped around an axle on this issue for decades. *See, e.g., Stallworth v. Brollini*, 288 F.R.D. 439, 443 (N.D. Cal. 2012) (*citing Boyd v. City & County of San Francisco*, No. C-04-5459, 2006 U.S. Dist. LEXIS 34576 (N.D. Cal. May 18, 2006)); *Flowers v. Owens*, 274 F.R.D. 218, 223-24 (N.D. Ill. 2011).[3] And, to be fair, a reasonable person can understand why: There are two competing interests that must be balanced. On the one side of the scale, the privilege exists for good reason. *See Jaffee*, 518 U.S. at 10 ("By protecting confidential communications between a psychotherapist and her patient from involuntary disclosure, the proposed privilege thus serves important private interests."). But if the privilege is automatically waived by merely seeking

---

[3] As he so often does on a variety of issues, in *Flowers*, Magistrate Judge Cole issued a *tour de force* opinion fully explaining the history of the conflicting jurisprudence on when plaintiffs waive the psychotherapist-patient privilege by seeking emotional distress damages. But *Flowers* does not pick a side in the conflict because of the procedural posture presented. *Flowers*, 274 F.R.D. at 224 ("But the issue need not be decided in this case in light of the defendants' concession that a claim for garden variety emotional damages does not waive the privilege and the parties' agreement that *Santelli* controls."). Nevertheless, *Flowers* provides an extremely valuable launching point for anyone considering this issue.

3

emotional distress damages,[4] then the privilege loses much of its value. *See* Deirdre Smith, *An Uncertain Privilege: Implied Waiver and the Evisceration of the Psychotherapist-Patient Privilege in Federal Courts*, 58 DePaul L. Rev. 79, 81-82 (2008). On the other side of the scale, defendants have the right to defend themselves. If plaintiffs claim damages because of defendants' actions, then defendants should be allowed to discover the bases and relative merits of those damage claims. It is a matter of fundamental fairness. A plaintiff cannot use mental health damages as both a sword and a shield. *Flowers*, 274 F.R.D. at 225; *see also Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997) (*citing Premack v. J.D.J.Ogar, Inc.*, 148 F.R.D. 140, 144-45 (E.D. Pa. 1993)).

Not surprisingly, because of these competing interests, courts have devised different approaches to determine when plaintiffs waive the privilege. No consistent approach exists. *Greenberg v. Smolka*, No. 03 CV 8572, 2006 U.S. Dist. LEXIS 24319, at *16 (S.D.N.Y. Apr. 27, 2006). The common law process has created three approaches. Michael D'Ambrosio, Note, *The Psychotherapist-Patient Privilege in Prison Litigation: How Can You Claim "Garden Variety" Emotional Distress When the Flowers are Made Out of Steel*, 43 Fordham Urb. L.J. 915, 936-46 (2016); Helen A. Anderson, *The Psychotherapist Privilege: Privacy and "Garden Variety" Emotional Distress*, 21 Geo. Mason L. Rev. 117, 129 (2013). Predictably, the three approaches are a (1) broad application of waiver, (2) narrow application, and (3) middle ground. *Cappetta*, 266 F.R.D. at 128-29. Under the broad application, the plaintiffs waive the privilege by merely seeking damages for emotional distress. *Id.* Under the narrow application, the plaintiffs must place "an affirmative reliance on the psychotherapist-patient communication" to waive the privilege. *Id.* The middle ground finds that no waiver occurs if the plaintiffs are only seeking "garden variety" damages. *Id.* An unhelpful definition of "garden variety damages" is damages that are "ordinary, common, or unexceptional." D'Ambrosio, *The Psychotherapist-Patient Privilege*, *supra*, at 946. Alternatively, without citation to authority, one court has defined garden variety damages as "negative emotions that [a plaintiff] experienced as the intrinsic result of defendant's alleged conduct, [such as] humiliation, embarrassment, and other similar emotions." *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999); *see also Flowers*, 274 F.R.D. at 225 (collecting various characterizations of "garden variety"). This definition and the bases for the

---

[4] To be clear, in this case, like so many other cases addressing this issue, Plaintiff does *not* plead a claim for intentional infliction of severe emotional distress. When plaintiffs assert that claim, an element of the claim relates to emotional distress (hence, the name). So, the plaintiffs' mental health is clearly at issue. In this Court's view, those cases are easy. The privilege has been waived. *Seegmiller v. Macey's Inc.*, No. 12 CV 875, 2013 U.S. Dist. LEXIS 87055, at *5-7 (D. Utah June 19, 2013); *Cappetta v. GC Services, L.P.*, 266 F.R.D. 121, 128 (E.D. Va. 2009); *Green v. St. Vincent's Med. Cntr.*, 252 F.R.D. 125, 129 (D. Conn. 2008). Indeed, plaintiffs have conceded this point. *See, e.g., Matz v. Fifth Third Sec., Inc.*, 07 CV 278, 2009 U.S. Dist. LEXIS 50562, at *7 (N.D. Ind. June 15, 2009). The more difficult cases are ones like this one, in which plaintiffs seek "garden variety" emotional distress damages, but do not plead that tort.

adoption of the middle ground approach have been criticized as being difficult to apply and foundationally weak. *Green*, 252 F.R.D. at 129 ("[T]here remains broad disagreements between courts. . . as to what constitutes a mere 'garden variety' emotional distress claim."); Anderson, *The Psychotherapist Privilege*, *supra*, at 118-19; Smith, *An Uncertain Privilege*, *supra*, at 112-13. Indeed, little guidance exists for determining what damages are "garden variety." *Green*, 252 F.R.D. at 128 ("These cases provide little guidance for characterizing a claim as 'garden variety.'"); *Flowers*, 274 F.R.D. at 225 ("The problem in these cases is definitional and stems from the imprecision and elasticity of the phrase 'garden variety.'").

### b. The Seventh Circuit Adopted the Broad Approach

This Court believes that the Seventh Circuit in *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006) applied waiver of the psychotherapist-patient privilege broadly, although some courts may disagree. But this Court's belief is supported in three ways. First, the language that the Seventh Circuit uses in *Oberweis* is broad and sweeping: "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Oberweis*, 456 F.3d at 718. This Court understands Judge Cole's caution not to overread this statement, *Flowers*, 274 F.R.D. at 224, n.10. But this Court believes that the judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say. The broad language hedges no bets. In *Oberweis*, the Seventh Circuit is all in. The use of this type of language must have been employed for a reason. *Oberweis*, 456 F.3d at 718 (note the use of the words "entitled" and "any"). Indeed, the *Oberweis* opinion did not even use qualifying words or phrases that courts often use, such as "generally", "under these facts", and "in this particular case", to allow for wiggle room in the analysis. The *Oberweis* court then states that not only are defendants entitled to records, but they can also force plaintiffs to submit to Rule 35 psychiatric examinations. *Id*. According to *Oberweis,* if the plaintiffs are required to submit to that type of intrusive examination, then certainly they must be required to disclose documents. *Id*.

Second, case law – including cases from both within and outside the Seventh Circuit – recognize that the Seventh Circuit applies waiver broadly. *See, e.g., Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) (referencing *Schoffstall v. Henderson*, 223 F.3d 818 (8th Cir. 2000) upon which *Oberweis* relied); *Johnson v. Rogers*, No. 16 CV 2705, 2018 U.S. Dist. LEXIS 86769, at *8-9 (S.D. Ind. May 23, 2018) ("The Seventh Circuit in *Doe v. Oberweis Dairy* articulated a broad view of waiver..."); *Taylor v. City of Chicago*, No. 14 C 737, 2016 U.S. Dist. LEXIS 133715, at *7-9 (N.D. Ill. Sept. 28, 2016); *Price v. Wrencher*, No. 13 CV 1785, 2014 U.S. Dist. LEXIS 7448, at *6-7 (N.D. Ill. Jan. 21, 2014); *Sanders v. Energy Nw.*, No. 12 CV 580, 2013 U.S. Dist. LEXIS 149813, at *6-7 (E.D. Wash. Oct. 17, 2013) (describing this as a "broad statement"); *Dudley v. Stevens*, 338 S.W.3d 774, 777 (Kent. 2011) ("However, other jurisdictions have held that seeking damages for even 'garden-variety' emotional distress waives the psychotherapist-patient privilege." citing *Oberweis*).

5

Third, commentators agree that the Seventh Circuit falls within the broad waiver camp. D'Ambrosio, *The Psychotherapist-Patient Privilege*, *supra*, at 936-39; Anderson, *The Psychotherapist Privilege*, *supra*, at 131 (describing *Oberweis* as cursory and using "very broad language"); Smith, *An Uncertain Privilege*, *supra*, at 112.

### c. District Court Opinions Avoid and Ignore Precedent

But district courts in the Seventh Circuit have not consistently applied the clear language and broad holding of *Oberweis*. *See Taylor,* 2016 U.S. Dist. LEXIS 133715, at \*7-8 (citing *Caine v. Burge*, No. 11 CV 8996, 2012 U.S. Dist. LEXIS 182097 (N.D. Ill. Dec. 27, 2012); *Awalt v. Marketti*, 287 F.R.D. 409 (N.D. Ill. 2012); *Noe v. R.R. Donnelley & Sons*, No. 10 CV 2018, 2011 U.S. Dist. LEXIS 39492 (N.D. Ill. Apr. 12, 2011)). Instead, even after *Oberweis*, some courts have still applied the "garden variety" approach. *Taylor,* 2016 U.S. Dist. LEXIS 133715, at \*7-8; *see also Sanders*, 2013 U.S. Dist. LEXIS 149813, at \*6-7.[5] Some recent decisions have not even cited *Oberweis*. *See Awalt*, 287 F.R.D. at 417-18. And some decisions do not state why the Seventh Circuit's clear, sweeping language does not apply. *See, e.g., Estate of DiPiazza v. City of Madison*, No. 16 CV 60, 2017 U.S. Dist. LEXIS 68821, at \*4-9 (W.D. Wisc. May 5, 2017). Instead, these decisions cite *Oberweis*, but then – in classic echo chamber fashion – simply move on to discuss how other district courts have adopted the "garden variety" approach before also adopting that approach. *See, e.g., Estate of DiPiazza,* 2017 U.S. Dist. LEXIS 68821 at \*4-9; *Noe*, 2011 U.S. Dist. LEXIS 39492 at \*3-4. Other decisions simply minimize the holding of *Oberweis*. For example, in *Caine v. Burge*, the court stated the following: "Some courts have interpreted the Seventh Circuit's single post-*Jaffee* opinion on the subject as falling into the 'broad' category, but the subject was addressed only briefly and did not expressly hinge the privilege waiver on the presence of an emotional distress claim." 2012 U.S. Dist. LEXIS 182097 at \*7. It is true that *Oberweis* did not linger on the issue. But a precedential holding is no less binding because it lacks extensive elaboration. Moreover, a short declaration is often much more compelling than a filibuster. Furthermore, by the time *Oberweis* reached the Seventh Circuit, it is true that the plaintiff no longer possessed a stand-alone intentional infliction of severe emotional distress claim. *Taylor*, 2016 U.S. Dist. LEXIS at \*9 n.1. But that is evidence that the Seventh Circuit in *Oberweis* approached waiver broadly, applying it even when the specific claim of infliction of

---

[5] This Court disagrees with the assertion that Judge Cole twice ignored the holding of *Oberweis*. Anderson, *The Psychotherapist Privilege*, *supra*, at 131. Instead, in both cases, Judge Cole found that he was not required to address the issue of whether asserting "garden variety" damages waived the psychotherapist-patient privilege. *See Flowers*, 274 F.R.D. at 224 (finding that because of the parties agreement that "garden variety" damages did not waive the privilege, the issue need not be decided); *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 994 n.8 (N.D. Ill. 2010) (plaintiff's stipulation that he was not seeking emotional distress damages negated need to address issue).

emotional distress was not at issue. *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 557 (N.D. Ga. 2001) (when intentional infliction of emotional distress claim exists waiver occurs).

This Court respectfully disagrees with these efforts to minimize *Oberweis* and is not bound by these decisions. *Cortright v. Thompson*, 812 F. Supp. 772, 776 (N.D. Ill. 1992). Indeed, this Court is not bound by the opinions of these district courts or even other circuits' opinions that have adopted the "garden variety" approach. *Id.*

### d. This Court Follows the Broad Approach Adopted by the Seventh Circuit and Rejects the "Garden Variety" Approach

This Court follows the broad approach adopted by the Seventh Circuit in *Oberweis* and rejects the "garden variety" approach for three reasons. One reason is precedential; one is analytical; and one is practical.

First, this Court is bound by Seventh Circuit precedent. This Court must follow Seventh Circuit decisions even if it believes those decisions are wrong or mistaken. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (district judges must follow the decisions of the Seventh Circuit even if they disagree with the decision); *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decision they believe mistaken."). The Seventh Circuit and the Supreme Court are the only courts that can limit the scope of *Oberweis*. Limiting the scope of appellate court decisions is not the district courts' role.

This Court is not alone in following *Oberweis*'s holding and rejecting the "garden variety" approach. In *Taylor v. City of Chicago*, Judge Lee conducted a comprehensive analysis of this issue, including the clear, sweeping language of *Oberweis*, and found that *Oberweis* applied the broad approach to waiver, which was binding precedent. 2016 U.S. Dist. LEXIS 133715 at *6-9. Judge Magnus-Stinson referred to Judge Lee's decision in *Taylor* as a "thorough analysis." *Johnson*, 2018 U.S. Dist. LEXIS 86769 at *10. This Court agrees with both Judge Lee and Judge Magnus-Stinson. "The rule espoused in *Oberweis* is straightforward and unequivocal." *Taylor*, 2016 U.S. Dist. LEXIS 133715 at *8. And the *Oberweis* decision tells the district courts precisely when a plaintiff waives the privilege; namely, "by seeking damages for emotional distress." *Id.* This Court agrees that *Oberweis* is binding precedent, requiring a broad approach to waiver. *Id.* at *9. That harsh results occur from a broad approach to waiving the psychotherapist-patient privilege does not justify avoiding the precedent.

Second, the "garden variety" approach is analytically unsound. It is important to remember the origins of the assertion that the privilege was waived. Defendants assert that the privilege was waived because plaintiffs put their mental health at issue. Analytically, it is difficult to find that plaintiffs that seek damages to their mental health have not placed their mental health at issue. The "garden variety" approach demurs on that axiomatic premise and supposes that plaintiffs did not place their mental health at issue. But, of course, plaintiffs placed their

7

mental health at issue: They are seeking damages for injuries to their mental health. Essentially, the "garden variety" approach allows plaintiffs to seek damages, albeit smaller damages, for emotional distress without waiving the psychotherapist-patient privilege. In other words, there's no "real" waiver because plaintiffs aren't seeking a lot of money. *Santelli*, 188 F.R.D. at 309 (no waiver because by stipulating to "garden variety" damages plaintiff limited the scope of the claim). But this approach allows plaintiffs to seek emotional distress damages – real dollars, regardless of how few – without allowing defendants the full opportunity to even seek discovery to contest those claimed damages. The Court is unaware of any other context in which defendants are not allowed to seek discovery to contest damages that plaintiffs put at issue. Indeed, in analogous circumstances, courts find privileges waived. For example, spouses seeking damages for loss of consortium waive the spousal privilege as to marital communications, allowing defendants to obtain discovery on those communications. *Powell v. UPS*, 08 CV 1621, 2011 U.S. Dist. LEXIS3627, at *7 n.4 (S.D. Ind. Jan. 13, 2011); *Ledbetter v. Wal-Mart Stores, Inc.*, No. 06 CV 1958, 2009 U.S. Dist. LEXIS 126859, at *4 (D. Colo. Apr. 21, 2009) (citing *Burlington N.R. Co. v. Hood*, 802 P.2d 458, 466 (Colo. 1990)).

Third, practical reasons support the adoption of the broad approach and the rejection of the "garden variety" approach. As noted above, the "garden variety" approach is exceedingly difficult to apply. Attempting to reconcile when a plaintiff is merely seeking "garden variety" damages as compared to something more is a fool's errand. *Compare EEOC v. Big Five Corp.*, No. C17-1098, 2018 U.S. Dist. LEXIS 85944, at *6, *11-12 (W.D. Wash. May 22, 2018) (plaintiff only seeking garden variety despite damages including depression, sleep loss, anxiety, nausea, diarrhea and withdrawal), *Ewald v. Royal Norwegian Embassy*, No. 11 CV 2116, 2014 U.S. Dist. LEXIS 192896, at *16-17 (D. Minn. Apr. 15, 2014) (depression and insomnia only garden variety damages), *and Murdock v. L.A. Fitness Int'l, LLC*, No. 12-975, 2012 U.S. Dist. LEXIS 154478, at *14, n.8 (D. Minn. Oct. 29, 2012) (garden variety damages include "'[d]epression, chronic fatigue, irritability, sleep abnormalities, insomnia, tiredness throughout the day, malaise[,] a significantly grim outlook for [the] future, and a feeling [of] never regain[ing] the prominence in [plaintiff's]career, or [plaintiff's] personal life.'") *with U.S. v. Barber*, No. C13-5539, 2014 U.S. Dist. LEXIS77395, at *4 (W.D. Wash. June 4, 2014) (nightmares, panic attacks and anxiety are more than garden variety damages), *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 553 (S.D. Ohio 2014) (sleep deprivation and depression are more than garden variety damages).

A possible solution to address this problem is for the parties to reach a stipulation that a plaintiff is only seeking "garden variety" damages and that the testimony will be limited to those types of damages. *See, e.g., Santelli*, 188 F.R.D. at 309. But there are several problems with this possible solution, and the solutions to those problems often beget other new, additional problems. Stipulations and motions *in limine* are not fool proof.

8

Initially, for example, because "garden variety" damages are difficult to define, counsel may honestly believe that they are only seeking "garden variety" damages, but defendants and, more importantly, courts disagree with that characterization. *See, e.g., Johnson*, 2018 U.S. Dist. LEXIS 86769 at *12 ("The fact that [plaintiff] lists as potential witnesses 'any and all' of his mental health professionals belies his new position that he only suffered and seeks damages for 'garden variety' emotional distress."); *Estate of DiPiazza*, 2017 U.S. Dist. LEXIS 68821 at *8,*9 ("If plaintiff held firmly to this representation, it would be an easy decision for the court to preclude discovery by defendants into [the decedent's] mental health records. . . The . . . more difficult complicating factor is that some of the testimony plaintiff now proposes to present in its damages case come close to putting [the decedent's] mental and emotional state at issue more generally."). Even if counsel have a true meeting of the minds, the agreement may fall apart while being implemented or counsel may simply renege on their agreements. *Flowers*, 274 F.R.D. at 222-23.[6] Sometimes, counsel violate stipulations and orders on motions *in limine* – even knowingly.[7] *Fuery v. City of Chicago*, 900 F.3d 450, 458-60 (7th Cir. 2018).

Further, even if counsel agree that only "garden variety" damages will be sought, a witness' testimony could easily stray beyond what is classified as "garden variety". *Taylor*, 2016 U.S. Dist. LEXIS 133715 at *10-11.[8] Preventing witnesses from testifying as to certain matters, even with the benefit of motions *in limine*, can be like trying to stop Barbara (played, of course, by Geena Davis) from saying "Beetlejuice". *See* https://www.imdb.com/title/tt0094721/. No amount of woodshedding guarantees a witness' testimony will not violate an order on a motion *in limine*. And, when a violation happens, the usual remedy is to strike the testimony and instruct the jurors not to consider the testimony. *See* Seventh Circuit Pattern Civil Jury Instruction 1.06 (2010) ("[I]f I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered."). But that remedy borders on hollow. Justice Jackson recognized this truth more than a half century ago. *Krulewitch v. U.S.*, 336 U.S. 440, 453 (1949) (Jackson, J. concurring) ("The naïve assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."). Social science

---

[6] By raising this possibility, the Court is in no way implying that Plaintiff's counsel in this case would improperly renege on an agreement or violate an order on a motion *in limine*. Before taking the bench, the undersigned litigated against Plaintiff's counsel, and, since then, Plaintiff's counsel has appeared before the Court on numerous occasions. The Court knows Plaintiff's counsel to be a man of his word who follows court orders.

[7] *See* footnote 6 *supra*.

[8] The flip side to the problem of witnesses improperly testifying to damages beyond "garden variety" subjects is that by artificially restraining their testimony they may appear to be less than credible in their testimony. Anderson, *The Psychotherapist Privilege*, *supra*, at 143 ("One wonders how these limitations on testimony might affect a plaintiff's credibility and demeanor as the witness struggles to stay within the garden boundaries.").

supports Justice Jackson's view. Daniel M. Wegner, *Ironic Process of Mental Control*, 101 Psychological Review 34 (1994). Instructing jurors not to think about stricken testimony all but guarantees that they will think about it. *See* Linda J. Demaine, *In Search of an Anti-Elephant: Confronting the Human Inability to Forget Inadmissible Evidence*, 16 Geo. Mason L. Rev. 99, 103-08 (2008). The "white bear effect" explains why people fail miserably when they try not to think about past flames from whom they have recently separated. Marisa Cohen, *How a White Bear Can Teach You to Forget Your Ex,* LUVZE https://www.luvze.com/how-a-white-bear-can-teach-you-to-forget-your-ex/.[9] Another possible remedy is to halt the trial, allow a defendant to reopen and take discovery, and then resume the trial. *Taylor*, 2016 U.S. Dist. LEXIS 133715 at *11. Good luck obtaining that order. The problems caused by this solution are staggering. Finally, declaring a mistrial is another possible solution to a witness violating an order or agreement limiting the scope of testimony to "garden variety" damages. But this is a drastic remedy to be used only with great caution. *United States v. Nina*, 734 Fed. Appx. 27, 34 (2d Cir. 2018).

\* \* \*

Proponents of the "garden variety" approach claim that it is pragmatic. *Estate of DiPiazza*, 2017 U.S. Dist. LEXIS 68821 at *5. But, as shown above, the approach is anything but pragmatic. The real rationale for the "garden variety" approach is the belief that the broad waiver approach leads to harsh results. The broad approach requires a Hobson's choice: Plaintiffs must either waive the privilege and allow discovery into confidential matters or assert the privilege and forego possible damages. Ellen McDonnell, *Certainty Thwarted: Broad Waiver Versus Narrow Waiver of the Psychotherapist-Patient Privilege After* Jaffee v. Redmond, 52 Hastings L.J. 1369, 1385-86 (August 2001). So, the middle ground espoused by the "garden variety" approach attempts to remove the Hobson's choice by giving plaintiffs protections for psychotherapist-patient statements while giving defendants protections by limiting damages. *Cf. Cappetta*, 266 F.R.D. at 129 ("claims where 'a large portion of the requested damages arise out of' claims of emotional distress also cause waiver."). But the "garden variety" approach – being a compromise approach – can be problematic for plaintiffs as well. *See, e.g., Santelli*, 188 F.R.D. at 309 ("This may be a meager victory for [plaintiff].").

*Oberweis* adopted the broad approach to waiving the psychotherapist-patient privilege, and this Court is bound by that decision. Further, even if the Seventh Circuit did not adopt the broad approach to waiver, this Court would adopt the broad approach. Not only is the "garden variety" approach analytically flawed but it is also problematic for the practical reasons identified above. The "garden variety" approach is a half-measure that seeks to find a middle ground, which ultimately does not accomplish its alleged pragmatic goal.

---

[9] The theory of ironic processes sometimes references a white bear, while, at other times, references a white elephant. Fyodor Dostoevsky gets credit for the bear. Mark Twain gets credit for the elephant. Choose your corresponding quadruped or author.

10

**B. Relevance**

Because the requested discovery seeks information that relates to Plaintiff's claims for damages, the discovery is relevant under Rule 26(b)(1). No citation is needed to support the proposition that discovery related to a plaintiff's claim for damages is relevant.

The discovery is also relevant for another reason. Defendants assert that Plaintiff's mental health is relevant because it helps explain why Defendants' version of the events is more credible than Plaintiff's. In contrast, Plaintiff asserts that if Defendants were unaware of Plaintiff's mental state at the time (and there is no evidence that they were aware), then the information is not relevant to the excessive force claim.

Plaintiff reasonably and understandably relies on cases such as *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992). It is a good case for Plaintiff. In *Wallace*, the Seventh Circuit affirmed the district court's refusal to allow the defendants to introduce evidence at trial from a medical expert regarding one of the plaintiff's mental condition. *Id.* at 336. The *Wallace* court relied upon *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986), and stated the following:

> The lesson of *Rascon* is the danger that a jury will conclude that a mentally deficient plaintiff, regardless of his actual behavior, somehow "asked for" mistreatment at the hands of two policemen is greater than the value of such evidence to explain the officers' use of force. That general proposition seems especially correct where – as here – the police officers had no specific knowledge of [plaintiff's] condition before they tried to take him away. The trial judge found, and we agree, that the forbidden evidence would have shifted the focus from [plaintiff's] actions to his condition. Only his actions can justify the use of force. Evidence as to the general propensity of people suffering from his ailments to make similar attacks would have been more prejudicial than probative value to the defendants.

*Id.*

In contrast, Defendants reasonably and understandably rely on cases such as *Estate of Escobedo v. Martin*, 702 F.3d 388 (7th Cir. 2012). *Estate of Escobedo* limited both *Wallace* and *Rascon*. *Id.* at 401. Pursuant to *Estate of Escobedo*, in certain circumstances, information, including the mental state of the plaintiff or decedent, unknown to police officers at the time that force was used can be relevant, and even admissible, to not only establish the credibility of the officers' version of the events but also to attack other witnesses' credibility and impeach witnesses by showing contradictions or discrepancies in testimony. *Estate of Escobedo*, 702 F.3d at 399. In *Estate of Escobedo*, the Seventh Circuit affirmed the district court's decision to allow evidence of a psychological profile of the decedent, although the defendant officers were unaware of the plaintiff's mental condition at the time. *Id.*

11

at 399-400. In distinguishing *Wallace* and *Rascon*, the Seventh Circuit found that those case "involved attempts to introduce evidence of mental illness to show that force *might* be needed to deal with the individual in question." *Id.* at 401 (emphasis in original).

Accordingly, because Plaintiff's mental state *could* be used to support the Defendants' version of events, it is relevant for discovery purposes. The Court is not finding that the purported evidence would necessarily be admissible at trial. At this stage, the Court is only concerned with relevance under Federal Rule of Civil Procedure 26(b)(1), not relevance and admissibility under Federal Rule of Evidence 401. And because *Estate of Escobedo* involved relevance and admissibility under Federal Rule of Evidence 401, by definition, the information Defendants seek is relevant under Federal Rule of Civil Procedure 26(b)(1). Fed. R. Civ. P. 12(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable."). For those needing visual aids to understand concepts, perhaps this Venn diagram of "relevance" under the two rules may help.



Before leaving the topic of relevance, it is important to note that Defendants' argument regarding the relevance for establishing their credibility would not, standing alone, be sufficient to establish discoverability. It is only because this Court found that Plaintiff waived the psychotherapist-patient privilege that it addressed this aspect of relevance. Defendants cannot affirmatively place plaintiffs' mental states at issue by showing that it is relevant to establish waiver of the psychotherapist-patient privilege. *In re Sims*, 534 F.3d 117, 134 (2d Cir. 2008). As noted previously, there are three separate and distinct steps in determining the

scope of discovery. First, is the information privileged? Second, is the information relevant under Rule 26(b)(1)? And, third, is the information sought proportional to the needs of the case?[10] Being relevant does not make information not privileged.

## V. CONCLUSION

Although the mental health records are privileged, Plaintiff waived the privilege by placing his mental health at issue. Additionally, the mental health and drug and alcohol treatment records are relevant under Federal Rule of Civil Procedure 26. Therefore, the Motion is granted. Subject to an appropriate protective order, Defendants may seek and obtain mental health and drug and alcohol treatment records and information regarding Plaintiff from June 22, 2010 to the present.

Entered: October 29, 2018     By: _____
                                  Iain D. Johnston
                                  U.S. Magistrate Judge

---

[10] Proportionality was not raised as an issue in the briefing on the Motion. So, it is not addressed in this order.